This case has been set for 15 minutes per side, so if you want to make a rebuttal argument, do your best to stop before all of your time is used up. Please proceed. May it please the Court, I'm Zohail Kakavan, pro bono counsel for Petitioner Reyna Sanchez. I'd like to reserve three minutes for rebuttal today. And could you speak up, please? Yes. Thank you. Perfect. Thank you. I hope to discuss three things this morning. First, why the Board and Immigration Judge erred in applying the Unable or Unwilling Non-State Actor Test. Second, why substantial material evidence satisfies Petitioner's burden of proof under this test and likewise establishes the government's acquiescence with regard to CAAT. And lastly, why the Board's errors stem from its failure to review de novo the legal question involved in the Unable or Unwilling Test. I'd like to begin with the first. The Board and Immigration Judge erred in their application of the Unable or Unwilling Non-State Actor Test. Madrigal provides the proper standard in the circuit. In that case, this Court held that it's legal error to consider only one of the two prongs of the Unable or Unwilling Test. Its reasoning was that evidence of efforts go only to willingness and are of little relevance to ability. As such, the test is a disjunctive test requiring two separate considerations of willingness and ability. It also follows that evidence of efforts with nothing more is not dispositive of ability. You know, it's an interesting case because it does focus, as you point out, on efficacy. The government's response to that seems to be, well, there's no guardrails as to what efficacy means. What is your response to that? Although there are no guardrails to what efficacy means, efficacy gets to the question of a government's power to act. And it comes into play when there are actors who have usurped the government's control or power over its sovereignty, what a government does. You want us to remand so the VIA can make those findings? I would like a remand with proper instructions as to the test to apply because the agency applied the wrong test here. Is there a test beyond what Madrigal talks about, the efficacy of efforts? Not that I'm aware of. I think the efficacy of efforts gets to the heart of ability. Respondents' reading is flawed because it contravenes willingness and ability. The immigration judge looked only to the government's response in relation to the past harm that petitioner suffered and the government's laws meant to address that harm. These only address willingness. Because ability is a bigger question than willingness, the government, the agency should have also considered efficacy, which it didn't. The board asked to correct the error, did consider ability separately from willingness, but misapplied the unable and unwilling test. For the standard they cite to Hussein and the language they cite from Hussein to the extent it's offered for the proper test for unable and unwilling is flawed. It disregards Madrigal. The board also cites to Velazquez Gaspar, which is completely distinguishable here as it addresses an entirely different scenario where petitioner was found not credible. She was not pursued by powerful, violent, transnational organizations, and she does not come from El Salvador, the country with the highest homicide rate in the world. The facts here are also similar to the facts in Madrigal. Here petitioner was kidnapped, received death threats, and testified that she believed the police and her persecutors were working in tandem. Counsel, I have a question for you. Yes, Your Honor. Under your view of the case, do we need to grant and remand the full case or are there some claims on which we should deny? I think this court should find that substantial evidence establishes petitioner's burden under the test, and finding that she satisfies the test, you can remand for consideration of the remainder of the issues in her claim. In essence, proper application of the unable and unwilling test requires proper consideration of the pertinent facts. Here there were facts that were disregarded or overlooked that are pertinent to petitioner's claim. She testified regarding death threats she received after the past harm she suffered. She testified that a friend of hers who cooperated with the authorities was later killed. And she presented country conditions reports, painting an entirely different picture in El Salvador with regard to her independent, well-founded fear of future persecution. Here the government, the agency only looked to the past harm she suffered and the government's response to that, and did not consider evidence of the future persecution that she felt. As such, her credible testimony and documentary evidence establish her burden of proof. To determine the ability prong of the unable and unwilling test requires careful evaluation of the country conditions reports and of petitioner's situation. Here the agency failed on both counts. They selectively cited country conditions reports and disregarded the significance of petitioner's testimony that got to her fear of death. At a bare minimum, remand is required for the board to consider the evidence that was overlooked here. The reason I believe the board overlooked evidence was because it did not perform de novo. The facts are supposed to be bifurcated from the legal question. Facts are reviewed for clear error and the ultimate legal question is to be reviewed de novo. Now the unable and unwilling test is a legal question as evidenced by the parameters of the test. It's a disjunctive test. There's a question as to sufficiency of protection. There's a exception to reporting. Reporting is not required. There's a futility and danger or danger exception to reporting. All this is evidence that the unable and unwilling test is a legal test involving legal principles applied to the factual findings to ultimately reach a legal conclusion as to the consequences. Here the board was overly deferential to the immigration judge. The scope of the board's review was limited. There's evidence in the record that undercuts the immigration judge's findings that were As in Madrigal, this case requires further review to account for the evidence of inability present. The board must consider the totality of circumstances applicable and cannot limit its review to immigration judge's misfocused and limited findings. As to CAT, because it is forward-looking, the agency could not properly consider the future probability of torture if it misidentified petitioner's true fear. The same evidence overlooked in the asylum analysis establishes police acquiescence with regard to CAT. Petitioner's undisputed testimony was that the police were connected to the gangs and that she was intimidated by a police officer with a gang tattoo. Her belief of infiltration, her belief that her persecutors infiltrated the police and her evidence of death threats are evidence of ongoing persecution. They're consistent with the country conditions reports as to the situation in El Salvador. And the board's decision in matter of OFAS establishes that one corrupt police officer with awareness is sufficient to establish acquiescence. I thought she told MS-13 herself that she was cooperating with the police. She did tell the MS-13 that she was cooperating with the police, that she intended to cooperate with the police. So this claim that the CAT relief is based in part on the fact that the gangs must have learned she was cooperating with police doesn't quite hold water if, in fact, she told them herself that fact. She told one member of the MS-13 that she spoke to that she intended to cooperate with the police. Then when she went to the police station to file a report, she was intimidated by a police officer with a gang tattoo. It's unclear if that police officer learned through her telling the other individual or some other way. But nonetheless, that police officer's awareness of her situation does establish police acquiescence. Counsel, my question for you is this, factually, what was the nature of any torture that petitioners suffered when in the hands of the gang? What was the nature of the torture, Your Honor? She was brutally, she was kidnapped and brutally raped by eight men and held overnight and threatened with death. She was fortunate to escape, but that's the nature of the past harm she suffered. Thank you. Thank you. If there are no further questions, I reserve the remainder of my time. No questions from me. Hearing none, thank you. We'll hear from you further on in rebuttal. Ms. Carlson. Good morning, Your Honor. May it please the Court, Jesse Carlson for the government. As I was saying, take your time to adjust that podium. Can you hear me okay? Okay. Your Honor, this case undoubtedly presents a factual scenario that is acknowledged by the Board to be significantly traumatic and certainly an unfortunate scenario. However, it's the government's belief that the Board got the case right on the law and properly applied the substantial evidence, I'm sorry, properly applied the correct standard with regard to the clearly erroneous review of the IJ's decision. The Board, the government urges this Court to apply the highly deferential substantial evidence standard to this case based on those factual determinations. That really is the most important thing to look at here is whether the record actually compels a different result. And in this case, there is significant evidence that the government of El Salvador provided a significant amount of assistance and protection for Petitioner in this matter. As the record reflects, the government took, went through a, there's a significant list of efforts that were taken in this case that you don't see in some of the other cases cited by Petitioner. For example, going into Madrigal, Madrigal is factually distinguishable. In that case, there were no reports made to law enforcement. There was nothing, nothing demonstrated there as far as law enforcement efforts that were taken in this case. In this case, you had a situation where there was a prosecutor ready to bring charges against the perpetrators who met with the Petitioner. You had the Petitioner herself indicating that the police provided her with substantial assistance and prevented further harm. So while she has also alluded that she had some fear of one police officer in particular, she did acknowledge the significant assistance that was provided to her. In addition, you have a prosecutor in this case who went to her home and continued to try to pursue the charges in this case. So there's very significant evidence the El Salvadoran government took these charges of rape very seriously. The law also provides that those cases must be brought regardless of whether the Petitioner is willing to testify. So I think the record here... of the El Salvador government, which is reflected in the record. But the point of Madrigal, as I read it, is that there's kind of two aspects, the willingness and the efficacy. And it didn't seem like the BIA analyzed efficacy here. So, Your Honor... If you can point in the record to where actually they examined efficacy. Sure. The board actually did. Of what occurred in this case. In fact, you know, I would contend that compared to some other cases, they were highly detailed here. The board actually does go through and talk about it on page four of the record. It would be the second full paragraph. The government or the board there does talk about the willingness, of course, but also the ability to control the gangs. And certainly talks about the fact that, you know, acknowledges the Petitioner's position here regarding that issue. And then cites to a number... and then further into the case, the board does cite to Hussain and this would be the first full paragraph on page five of the record. Where the board does cite to Hussain and Velazquez Gaspar, which are two very important cases on this issue, which addresses the ability and the government's ability to control these private actors. And I think the other important thing to point out is that there is no requirement that a government provide perfect protection. And there's certainly... I'd be hard pressed to see any government who could provide perfect protection. There is a big emphasis here on resources in a lot of these cases as well. And as you can see, the government in El Salvador has attributed significant resources. And that all goes to their ability to control the private actors, but that's really not even the test. The test is whether they could protect Petitioner and they have the ability to do that. And in this case, as opposed to other cases that are in the record or that have been discussed in the briefing, the resources are significant. So the problem I'm having with this is that this is just a very conclusory assertion by the board without any discussion of any of the evidence. We just have a sentence, under the circumstances in this case, the record supports the IJ's finding that the Salvadoran government is not unable to extend protection. But there's really no discussion of any evidence in the record here. Well, the burden is actually on the Petitioner to proffer the evidence in this situation. And Petitioner also does not articulate specific pieces of evidence to show and demonstrate that the government would not and could not protect her. And that is the burden that she carries, which is probably why the board didn't go into any great detail there and made more conclusory responses on that issue because there wasn't something specific really to respond to at that point. And the burden is on the Petitioner in that regard. So, again, and efficacy is really, there is no specific test that has been articulated by the board for the unable and unwilling standard. The test is, you know, Petitioner's counsel talks a lot about a test. There is no specific test. It is an amorphous assessment based on the facts of each case. And that is... I didn't hear him say there was a test. I thought he admitted there were, there are no guardrails that the courts have established. Right. I think he definitely said that, but then he kept referring to a standard or a test. And I just want to point out that that doesn't exist for this. This is a, this is something that was created by the board. It's supposed to be a fact-specific determination based on each case. And the case law in this circuit also acknowledges that. I think you have different assessments based on different facts in each case. So, what are the facts here that go to the prong of Madrigal about efficacy and ability? The facts in the case that...  Right. That we're arguing. Right, right. I'm sorry if you could rephrase that. Are you saying which facts in the record demonstrate the efficacy? Yes. The ability and efficacy. Well, the resources, I think, are a huge, a huge set of facts that show that the government here actually has the resources and has used the resources to protect the petitioner in the past. And that is certainly indicative of its ability to do so in the future as well. And so, there are significant facts in this case about those resources that government and El Salvador has been attributing a lot of resources to quell any of this gang violence. And in this case, as opposed to some of the other cases that we've talked about, in Madrigal involved a case in Mexico, you know, a set of facts in Mexico where there were no law enforcement reports. There was no involvement or no ability to assess what the law enforcement there would do if there had been a report. That is different. This case, there is lots of evidence in the record to show... Lots? Just tell me some. Well, the government, again, there was a... The police did respond to the harm that was being perpetrated and did stop further harm. I think that petitioner acknowledges that and has acknowledged the police. She had reported things to the police and has talked about the gang's fear of the police in El Salvador. So, that is one big thing. There's the prosecutor that did meet with the petitioner at the hospital in this situation and was willing to take the case, you know, and prosecute the case and bring the perpetrators to justice. There was the visit to her mother's home after she already left. They left paperwork in the event that she would come back and that she could prosecute the case. So, there's significant evidence to show... I hear that. That goes to their willingness, but not necessarily their ability. So, I was trying to zero in on the ability or the efficacy, if you would. Again, the ability is the fact that they have the resources. She didn't... There's... She has the burden to show that they would not protect her, and she has not provided anything to demonstrate that she would not protect it if she were to return to El Salvador. She has said that she doesn't, you know, she's indicated some of her fears, but she has not proffered anything to show that they would turn a blind eye, that they would not protect her if something were to occur upon her return to the country. So, the resources, I think, is a really significant thing to show versus some of the other cases where... So, provided resources, are there any other facts that, in the record, you want us to look to? Well, I believe it's, you know, again, going back to petitioner's burden, you know, her assertions are speculative. There's no way to know, necessarily, what would occur, you know, in this situation. So, you... The court really should look at what is available to her if she were to return versus another country who, for example, I think it was Eifere, where there was a... And I think it might have been in a country where there was one police officer in the town and they had to drive several, you know, several towns to get any law enforcement response and there might have... They had one gun. You know, clearly, in that case, you're looking at an entirely different situation versus a government has put a lot of effort into trying to reduce the violence against its citizens. So I think that is one thing, you know, it's a very significant part of this. And the other issue to point out is that that is, you know, efficacy is not a test. That is not something that is required to be assessed. You really... The court should really look at everything together and, in this case, it's really an And in this case, I think the evidence is very clear that it does not compel a contrary result, as I pointed out already. You know, the crime of rape has been taken very seriously here and perfect protection is not required. And the board has explained how effective government protection is important in that assessment, but that no government can provide perfect protection all the time. And the applicant has to show that the government has more than a general difficulty in controlling or preventing the conduct of the non-governmental forces. So evidence that a government makes a reasonable effort to investigate, prosecute, and punish that behavior is certainly important and goes to the ability prong. With regard to anything else in the case, I think it's, you know, I think the record in this case is strong on the law. I think there are, you know, if you have any additional questions on any of these points, I'm happy to answer them. But at this point, the government certainly stresses the substantial evidence burden. And as far as looking at the board's decision and what it did with regard to the standard, you know, there's a suggestion by Petitioner's Council that this should be a bifurcated review. And it's the government's position that this is a largely factual determination, that this is not, in these cases, this is largely factual review. And to the extent there is any question about whether the board did assess the case based on the facts and the law, again, the board goes a bit further in its decision that it probably has to based on the, you know, the case law. And it does engage in both the factual analysis and then ultimately a de novo review as well as a step forth in our brief. But that is certainly not, you know, the government's position that as to what is required. It's really a largely factual determination based on the record before the court. Based on all of that, unless the court has any other questions, the government respectfully requests that the petition for review be denied. Okay. Thank you. Thank you very much. A respondent's assertion that the board got the test right is flat out wrong. Madrigal controls the board's decision to not cite to Madrigal and it's cited to Hussain for an improper standard. This court must remand for the proper application of the unable and unwilling test. Respondent raises a straw man argument that perfect protection is not required. Never has that been asserted, that perfect protection is required, yet our position is that something more than efforts is required to demonstrate ability. So while perfect protection isn't required, more than mere efforts is required. That is the standard under Madrigal. The only question before this panel that is subject to substantial evidence review is the question of whether petitioner met her burden under the test. As to all other questions, this court's review is de novo. Counsel? Yes, Your Honor. What are the key facts in the record as you see it that demonstrate, that compel the conclusion that the government is unable to control, to control this gang? Thank you, Your Honor. Yes, it's her testimony that she fled El Salvador because she feared death. Her testimony that the police officer intimidated her and abundant country conditions reports demonstrating the situation in El Salvador. The highest homicide rate in the world, the most violent country in the world. Obviously the government's efforts are ineffective here. I think the record speaks for itself. The agency either disregarded or overlooked tons of evidence establishing this, the country conditions in El Salvador. I think this court's decision in J.R. is also instructive. In J.R., this court found that there's a temporal component to the unable and unwilling analysis. Once the petitioner situation changed in J.R., this court found that the government was no longer willing and able. Likewise here, petitioner suffered past harm and then her situation changed. Yet the agency's focus remained on the past harm and did not account for her future fear. Thank you, counsel. Thank you, Your Honors. The Sanchez-Agueda versus Garland case shall be submitted.
judges: McKEOWN, GOULD, Baker